IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WALTER PARKER, 4247 Locust Street, #119, Philadelphia, PA 19104, and **GORDON ROY PARKER**, Plaintiffs v. **FAIRFAX APARTMENTS ASSOCIATES et al.** , Defendants | : : : : : : : : : : : | Case No: 16-cv-2710 CDJ |



FILED

AUG -1 2016

LUCY V. CHIN, Interim Clerk
By_____Dep. Clerk

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs in the above-styled action, individually and collectively, move this court for summary judgement; in support, they set forth and aver the following:

***Justice delayed is justice denied.*** Win, lose, or draw, too much money is at stake here for Plaintiffs (or Defendants) to be able to plan their futures with certainty in the absence of resolution. There is no reason to further delay justice, given for how long it has eluded the Plaintiffs. The only "justice" Plaintiffs have found so far is relief from their uncompensated, 24/7/365 joint responsibility for covering their former station, a responsibility which now falls on the two or three individuals who have replaced them.

This is not a case where the underlying facts are in dispute, and it *is* a case where the Defendants' have relied on an outright *illegal* theory of law to support their defense. Consequently, summary judgment should be granted on all counts, against all Defendants. Alternatively, partial summary judgment against some Defendants should be granted.

### Undisputed Facts

The undisputed facts supporting summary judgment have been set forth by Defendants, either in their correspondence with the Plaintiffs, or in the pleadings in this case. The few which were not are self-evident, or easily proven.

1. "Walter Parker started working at the Fairfax [directly owned by Defendant Fairfax Apartments Associates] front desk in 1988. When Walter started working at the front

desk, he worked with his late mother, Penny Parker. Ms. Parker had an agreement with the Fairfax apartments whereby Ms. Parker was given a rent credit in consideration for her extra hours worked. *When Ms. Parker passed away, Walter assumed Ms. Parker's job responsibilities and the rent credit.* At all times, Walter was free [to] move out of the Fairfax.[1] (Memo, ¶ II, p.3)

Here, Defendants have admitted that Penny and Defendants had an express or implied employment contract that was assumed by Walt upon her death in 2007. Since Penny's employment records are already in Defendants' possession, they can confirm these particulars, as they relate to that agreement:

      a.    Penny worked regular shifts at the Fairfax front desk ("The Desk").

      b.    Penny worked "extra hours," for which she was compensated via a purported $700.00 monthly "rent credit."

      c.    Since Penny *never* worked overtime at The Desk (that was Walt's job), the supposed "rent credit" could not have been for any extra Desk shifts (overtime). Penny was paid every dime she was owed for every hour she worked at The Desk.

      d.    The "extra hours worked," for which Penny (and then Walt) received the purported "rent credit," was for the time she spent *on-call*, ready to cover any absent or late desk workers.

2. *"Plaintiffs have a month-to-month lease with the Fairfax. The ]renewal] dated June 9, 2015 identifies Plaintiffs' [cash] rent as $450 per month.* (Memo, ¶ IV(E)(ii), p. 14)

Were Plaintiff's *true* rent actually $450.00 a month, there would have been no need for a $700.00 monthly "rent credit," and all on-call time would have simply been uncompensated, leaving no reason for Walt to sacrifice all or most of his personal time, even "sleeping with one eye open" and never traveling far, to provide emergency Desk coverage literally 24/7/365, or the 112 hours a week he was on call. Transactionally, Walt (who assumed Penny's agreement, as shown above) was "paid" $700.00 a month to be on-call,

---

[1]The final sentence of the paragraph, which says (in full) "Free to move out *while maintaining his employment*," is disputed. While Walt could have moved, it would have been impossible to function as "desk manager" even if Defendants had permitted it (Walt, and Penny, had been previously told they wouldn't).

2

which was involuntarily applied directly to his total rent of $1,150.00 a month, instead of the $450.00 set forth in the lease. Once he stopped managing the desk, the "rent credit" ceased.

3. As set forth in the Amended Complaint (and not affirmatively contested), Walt was scheduled for *fifty-six* (56) hours each week at The Desk, worked an average of 60-70 hours (including fill-ins), yet was never paid the legally required time-and-a-half. The "rent credit" which was for his merely *being on-call at all times*, the entire 112 hours a week he was not scheduled for The Desk.[2]

### Summary Of Walt's Hours And Pay

4. Walt's time at the desk, as manager, can be divided three ways:

   a. *Regular desk hours*, for which he was paid a regular wage;

   b. *On-call time,* where he was available and ready to cover emergencies, at any time of the day or night, for every day of the year, literally without advance notice, even when sleeping, much like a surgeon who is on call for a hospital, during the times s/he is not actually performing surgery, but must be ready to do so, just like a firefighter on duty at the firehouse. It is for these hours, and *only* these hours, for which Walt's purported "rent credit" was given. Put simply, Walt was paid $700.00 a month for being on-call, with that money immediately *converted* to a "rent credit" to be added to the $450.00 rent stated in the lease.

   c. *Fill-in hours* at the desk, all of which were automatically greater than forty for any workweek, because Walt was scheduled for, and worked, his fifty-six (56) scheduled hours a week during all seven overnight shifts. For these hours, Walt was paid a regular, hourly wage ($9.75 for overnights, and $9.25 for days, at the end), but not any overtime. The "rent credit" inherited from Penny was never intended to be applied to any "extra hours worked" at the Desk, by Penny or by Walt.

---

[2] Defendants have repeatedly attempted "sleight-of-math" to obfuscate the $700.00 "rent credit," by attempting to apply it both to Walt's on-call time as "Desk manager," and to his overtime hours at the Desk, when it is clear from Penny's transactional history that overtime pay for desk hours had nothing to do with the purported "rent credit," itself illegal under 29 USC §203(m).

3

5. In its correspondence of March 4, 2016 Defendant attempted to "rewrite history" (*retcon*) the illegal "rent credit" by claiming it "covered any overtime premium," as noted in this excerpt of the letter:

> Recently emails were sent from your email account to my client making various demands, including that you be paid for all accrued but unused paid time off, and that you then be on federal Family and Medical Leave Act (FMLA) leave for 12 weeks thereafter, and that your job be held open for you in your absence until August 2016. You have not stated to management why you cannot work, and you continue to live in a rent-subsidized apartment within Fairfax Apartments. Note also, that you received a monthly $700 rent abatement that was to compensate you for any overtime premium.

6. Defendants are flat-out admitting that they attempted to use a "wage credit" (which they call a "rent credit") as a replacement for overtime wages they also admit was due Walt, whose $700.00 in *earned wages* for being on-call (which does not include any of the unpaid overtime and wages he is also due), was, on its way towards being paid to Walt (and Gordon, to the extent he had to be on-call in Walt's absence), *redirected* towards his true rent of *$1,150.00*, each month, with the actual cash wages winding up in the cash register at the *Company Store*.

7. Plaintiff avers, based on the above, that the $700.00 in monthly compensation for *on-call time*, as defined in subparagraph 4(b) above, was already paid, is already cash, and is already sitting in the *Company Store*, paid from the *Sixteen Tons* Walt lifted daily for Defendants. The layperson's and lawyer's term for this transaction is *truck system*, one expressly prohibited under 29 USC §203(m), because a landlord may not profit from renting to Plaintiffs, or anyone similarly situated.

8. Plaintiff further avers, based on the above, that he should have been paid time-and-a-half for all extra hours worked at The Desk (*"fill-in hours*), as set forth in painstaking detail in the Amended Complaint.

4

9. Alternatively, Plaintiffs aver that the monthly $700.00 "abatement," if not found to be paid towards the rent, is still owed to Walt as overdue wages for his *on-call time*.[3]

10. Plaintiffs further aver that the above-referenced correspondence of March 4, 2016 was when they discovered that their actual rent was not $450.00, but $1,150.00, with $700.00 diverted from Walt's overtime earnings. Plaintiffs had assumed that they were owed money for unpaid overtime and on-call time (for Walt), and for unpaid on-call time for Gordon (when on-call in place of Walt).

## CONCLUSION

WHEREFORE, Plaintiffs are entitled to summary judgment almost solely because of 29 USC §203(m), which leaves no "wiggle room" for Defendants to justify the $700.00 monthly *hijacking* of Walt's wages since 2007, and its consequences on all claims. While the FLSA "pre-empts" *identical* state-law claims, the $700.00 per month is not disputed wages under the FLSA, but rather *converted* wages which have *unjustly enriched* all Defendants.

## PRAYER FOR RELIEF

Plaintiffs seek identical relief to that sought in the Amended Complaint, incorporated here by reference. A Memorandum In Support of this motion is attached, as is an appropriate form of order.

This the 1st day of August, 2016.

_____
GORDON ROY PARKER, PRO SE
4247 Locust Street, #119
Philadelphia, PA 19104
snodgrasspublish@aol.com

_____
WALTER GRIGGS PARKER, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
Waltfx4247@aol.com
(267) 423-1405

---

[3] The 14.5 hours of "paid on-call time" referenced in Defendants' Motion To Dismiss, was not conclusory, but rather the monetary equivalent of the rent abatement, were the on-call time to be paid at minimum wage, at the last point at which it was paid to Penny. This did not mean that Walt was on-call only 14.5 hours a week, but that for the *112 hours a week* he (or Penny) was on-call, s/he was paid for 14.5 hours at minimum wage, with the "rent credit" designed to approximate this amount.

5

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER PARKER, 4247 Locust Street, #119, Philadelphia, PA 19104, and **GORDON ROY PARKER**, <br> Plaintiffs <br> v. <br> **FAIRFAX APARTMENTS ASSOCIATES et al.**, <br> Defendants | Case No: 16-cv-2710 CDJ |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs in the above-styled action, individually and collectively, submit this Memorandum of Law in support of the instant motion.

**FILED**

**AUG - 1 2016**

**LUCY V. CHIN, Interim Clerk**
**By_____ Dep. Clerk**

## I. INTRODUCTION

Defendants have freely admitted to breaking the law, rendering summary judgment appropriate. The remaining questions are amount of damages, under which law(s) Plaintiffs are entitled to recover them, and to what extent.

## II. LEGAL STANDARD

Plaintiffs incorporate by reference, as if set forth verbatim herein, Section II ("Legal Standard") of their Memorandum in Support of Plaintiffs' Motion To Dismiss, which outlines the legal standard for the individual counts other than the two listed here.

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome

of the case under governing law. Id. A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson.

**B.   29 USC §203*(m)* and 29 C.F.R. § 531.3**

*29 USC* §203*(m)* makes it illegal for a landlord employer to claim as a ***wage credit*** (not a "rent credit") anything beyond the ***actual cost*** of providing an apartment to an employee:

> "The section 3(m) credit may not exceed the "reasonable cost" or "fair value" of the facilities furnished, whichever is less. 29 U.S.C. § 203(m); FOH § 30c01(a). In this context, "reasonable cost" is "not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a); see also FOH § 30c05(a). In other words, "reasonable cost" "does not include a profit to the employer or to any affiliated person." 29 C.F.R. § 531.3(b). (Emphasis added)."

Even then, the wage credit can be claimed only when accurate, workweek-by-workweek records are kept. 29 USC §211(c) requires employers to "make, keep and preserve records" of employees' "wages, hours, and other conditions and practices of employment." Id.; 29 C.F.R. § 516(1). ***Where an employer has not kept adequate records of wages and hours,***

7

*employees generally may not be denied recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved.* Instead, the employees "are to be awarded compensation on the most accurate basis possible." Anderson.

In this case, Defendants would have to prove an actual cost and reasonable value greater than the $450.00 a month in cash the Plaintiffs paid for their rent. They cannot.

### III. ARGUMENT

This case should turn on 29 USC §203(m), which makes any "rent credit" illegal. While Plaintiffs could cite Defendants' shoddy record-keeping to challenge all rent paid, and cite Defendants' waiver of any statute-of-limitations defenses by not including them in their Motion To Dismiss, Plaintiffs are willing to temporarily stipulate, for purposes of this motion only, that $450.00 was the actual cost of renting to Plaintiffs, and that buried somewhere in the Klein vault are records which would show this. That still leaves $700.00 a month in either unpaid on-call time, or overpaid rent. For purposes of this motion, Plaintiffs are arguing that the money is overpaid rent, for which they are entitled to a refund, and in the alternative, they argue that the money is unpaid wages and/or overtime under the FLSA, for which they are entitled to payment.

### A. The Illegal "Rent Credit" Constitutes Conversion, For Which Plaintiffs Are Entitled To Judgment.

Conversion is when someone 1) deprives another's right of property 2) in, or use or possession of, a chattel, 3) without the owner's consent, and 4) *without lawful justification*. *Money may be the subject of conversion*. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1987). By standing proudly on their "rent credit," Defendants inadvertently admitted to violating the Pennsylvania tort of conversion.

Since 29 USC §203(m) precludes any "rent credit" over the $450.00 a month Plaintiffs were already paying (or the previous rents back to 2007), that money, which was paid as rent, should be *refunded* to Walt. The conversion claim is not pre-empted by the FLSA because

8

the wages were already paid, *converted,* and should be refunded as compensatory damages, with punitive damages added for the wanton, willful, and malicious nature of Defendants' conduct. Consequently, Plaintiffs' claim for conversion should prevail, in an amount to be determined post-judgment.

### B. The Illegal "Rent Credit" Constitutes Unjust Enrichment For Which Plaintiffs Are Entitled To Judgment.

The tort of unjust enrichment does not require the existence of a contract:

> The cause of action of unjust enrichment arises where one party has obtained a benefit at the expense of another under circumstances that make it unfair for the recipient to retain the benefit without paying for it. ***In Pennsylvania, where unjust enrichment is found, the law implies a contract,*** which requires the defendant to pay to the plaintiff the value of the benefit conferred. Schenck v. K.E. David, Ltd., 446 Pa.Super. 94, 666 A.2d 327 (1995). The elements necessary to prove unjust enrichment are:(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Id. (citation omitted)

In this case, all Defendants 1) had the benefit of $700.00 a month of Plaintiff's *paid wages* conferred upon them, by themselves, showed their 2) appreciation by continuing to accept only $450.00 a month in cash for an apartment whose market rent was $1,150.00, but is now $1,000.00 at cash value (indicating an overpayment of $150.00 a month within the illegal credit).

### C. Defendants Have Admitted To Not Paying On-Call Wages Or Overtime, For Which Plaintiffs Are Entitled To Judgement Under The FLSA And WPCL.

Two more "dominoes" which fall in the absence of the 29 USC 203(m) wage credit are Plaintiff's FLSA and WPCL claims, for against either Defendants now literally have no leg upon which to stand. The long-overdue back wages, for which Plaintiffs literally *sweated blood*, should finally be remitted, the sooner the better.

Under the FLSA, a plaintiff must prove that 1) he or she was employed by a covered defendant and 2) defendant failed to pay plaintiff minimum wage or overtime [to an employee] as required by law. Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353

(8th Cir. 1986). "Employee" is defined by Section 203(e)(1) as "any individual employed by an employer." *This definition has been interpreted as broad and expansive.* See United States v. Rosenwasser, 323 U.S. 360, 363 (1945).

"Employer" is defined in §203(d) as "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. An employer must know or have reason to believe that the employee is working. 29 C.F.R. §785.11; see Donovan v. Williams Chem. Co., 682 F.2d 185, 188 (8th Cir. 1982). *An employer who has such knowledge cannot passively allow an employee to work without proper compensation, even if the work has not been done at the request of the employer.* The workweek typically includes "all the time during which an employee is necessarily required to be on the employer's premises, *on duty*, or at a prescribed work place." Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 598 (1946). An employee is not completely relieved from duty unless the employee is told he or she can cease work.

Defendants' own pleadings and correspondence admit the existence of an employment agreement, which Walt assumed from Penny, and to which he added sixteen (16) of her weekly, scheduled desk hours to his forty, in addition to filling in on short notice, at any time of the day or night, for absent or late Desk workers, without so much as a single day off for over eight years. Defendants' claim that the overtime was "covered" by a "wage credit" posing as a "rent credit" are rebutted by 29 USC §203(m).

### D. Defendants Have Admitted To Fraudulent Misrepresentation Of The Rent, Which Also Constitutes A Breach Of The Lease, For Which Plaintiffs Are Entitled To Judgment.

The legal standards for both fraudulent misrepresentation and breach of contract, as detailed in both Defendants' Motion To Dismiss (with the presumption that 29 USC 203(m) had not made the wage credit illegal), have clearly been met, entitling Plaintiffs to judgment.

10

## IV. CONCLUSION

Justice delayed is justice denied. The facts are not in dispute. Defendants chose to stand on expressly illegal conduct, under which their entire case collapses. Summary judgment for the Plaintiffs on all counts, against all Defendants, or, alternatively, partial summary judgment on some counts against some Defendants, is clearly warranted.

This the 1st day of August, 2016.

_/s/ Gordon Roy Parker_
GORDON ROY PARKER, PRO SE
4247 Locust Street, #119
Philadelphia, PA 19104
snodgrasspublish@aol.com

_/s/ Walter Griggs Parker_
WALTER GRIGGS PARKER, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
Waltfx4247@aol.com
(267) 423-1405

11

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER PARKER, 4247 Locust Street, #119, Philadelphia, PA 19104, and **GORDON ROY PARKER**, Plaintiffs v. **FAIRFAX APARTMENTS ASSOCIATES et al.**, Defendants | Case No: 16-cv-2710 CDJ **FILED** AUG - 1 2016 LUCY V. CHIN, Interim Clerk By _____ Dep. Clerk |

## CERTIFICATE OF SERVICE

Plaintiffs in the above-styled action, individually and collectively, certify that they have served, by **hand delivery**, a copy of the foregoing Plaintiffs' Opposition To Defendants' Motion To Dismiss, and Plaintiffs' Motion For Summary Judgment, on defense counsel, at their regular place of business, as follows:

> Daniel P. O'Meara, Esq.
> Montgomery, McCracken, Walker & Roads
> 123 South Broad Street, 28th Floor
> Philadelphia, PA 19109

This the 1st day of August, 2016.

_____
GORDON ROY PARKER, PRO SE
4247 Locust Street, #119
Philadelphia, PA 19104
snodgrasspublish@aol.com

_____
WALTER GRIGGS PARKER, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
Waltfx4247@aol.com
(267) 423-1405

IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WALTER PARKER, 4247 Locust Street, #119, Philadelphia, PA 19104, and **GORDON ROY PARKER**, Plaintiffs v. **FAIRFAX APARTMENTS ASSOCIATES et al.**, Defendants | : : : : : : : : : : : | **Case No: 16-cv-2710 CDJ** |
|---|---|---|

## ORDER

AND NOW, this ___ day of ____, 2016, in consideration of Plaintiffs' Motion For Summary Judgment, and all responses thereto, the motion is GRANTED.

_____
J.