IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WALTER PARKER and                      :
GORDON ROY PARKER
        Plaintiffs,
                                :

    v.

4247 FX, INC., *a Pennsylvania Corporation*;   :   CIVIL ACTION
GARY KERSTEIN, *a Pennsylvania Resident*;       NO. 16-2710
JOYCE PRENTISS, *a Pennsylvania Resident*;
MARLA KLEIN KERSTEIN, *a Pennsylvania*   :
*Resident;* ALAN H. KLEIN, *a Pennsylvania*
*Resident*; FAIRFAX APARTMENTS
ASSOCIATES, *a Pennsylvania Corporation*;   :
and, JOHN DOES #1-10
        Defendants.

**<u>MEMORANDUM</u>**

**Jones, II    J.**                                                        **May 12, 2017**

**I. Introduction**

       Pro se Plaintiffs Walter Parker and Gordon Roy Parker commenced the above-captioned

suit against Defendants, alleging: violations of the Fair Labor Standards Act and Pennsylvania

Wage Payment Collection Law; Breach of Contract; Fraudulent or Negligent Misrepresentation;

Unjust Enrichment; Conversion; and, violations of the Fair Housing Act.  Presently before the

court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a

claim.  For the reasons set forth below, Defendants' Motion shall be granted, with leave for

Plaintiffs to amend particular claims, as specified herein.

## II.     Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations and citation omitted).  After the Supreme Court's decision in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## III.     Factual Background

Plaintiffs Walter and Gordon Roy Parker are brothers who live together at The Fairfax apartment building in Philadelphia, Pennsylvania.  (Am. Compl. ¶ 1.)  For a time, Plaintiffs also worked at The Fairfax as receptionists at "The Desk."  (Am. Compl. ¶ 14.)  In 1988, Plaintiffs' mother, Penny Parker, hired them to work in this position.  (Am. Compl. ¶  15.)  Plaintiff Gordon Parker was allegedly forced to resign from his position in October 1998, as a result of a controversy with the University of Pennsylvania. (Am. Compl. ¶ 17.)  He has not been a formal employee at The Fairfax since that time.  (Am. Compl. ¶ 17.)  Penny Parker passed away in July,

2007, at which time Plaintiff Walter Parker took over her responsibilities as desk manager.  (Am. Compl. ¶ 19.)

Plaintiffs allege that from 2007 through 2016, Plaintiff Walter Parker was required to provide full coverage for The Desk, with Plaintiff Gordon Parker covering for him at times when Plaintiff Walter Parker was unavailable.  (Am. Compl. ¶ 20.)  Plaintiff Walter Parker alleges he made himself available "at all times" in the event a time-sensitive issue relating to his duties at The Desk needed resolution.  (Am. Compl. ¶ 22.)

During the time that Plaintiff Walter Parker worked at The Desk, both Plaintiffs also lived at The Fairfax.  (Am. Compl. ¶ 1.)  Plaintiffs paid a reduced monthly rent of $450.  (Am. Compl. ¶ 50.)  This reduced monthly rent included an abatement of approximately $700 that offset the $1,150 per month market value of the apartment Plaintiffs occupy at The Fairfax.  (Am. Compl. ¶ 48.)

Plaintiff Walter Parker left his position at The Desk on February 29, 2016.  (Am. Compl. ¶ 57.)  Plaintiff sent an Americans with Disabilities Act (ADA) notification to Defendants, which he eventually withdrew.  (Am. Compl. ¶ 58(a).)   Plaintiff Walter Parker alleges that despite submitting two medical clearances, he was prevented from returning to his job.  (Am. Compl. ¶ 58(a).)

On March 1, 2016, Plaintiffs put Defendants on notice of their unpaid-wage allegations.  (Am. Compl. ¶ 58.)  Plaintiff Walter Parker claims he is owed a total of $44,567.50 for the overtime he worked while he was on call.  (Am. Compl. ¶ 25.)  Plaintiff Walter Parker also claims that Defendants have used his disability as a pretext for not allowing him to return to work, and his constructive termination is, in fact, retaliation for his wage complaint.  (Am. Compl. ¶ 58(a).)

IV.    **Discussion**

A.    **Claims Against John Doe Defendants**

Plaintiffs name as Defendants "John Doe #1 through John Doe #10."  (Am. Compl. ¶ 7.)

These John Doe defendants are meant to serve as placeholders for "any other entities or

individuals, including but not limited to outside investors, who own and operate The Fairfax, or

who are officers who assist, directly or indirectly, in its day-to-day operations."  (Am. Compl. ¶

7.)  Defendants urge this Court to dismiss all claims against the John Doe defendants, arguing

that while John Doe defendants may be used at times for privacy reasons, their use here is

inappropriate, as "Plaintiffs have personal knowledge of every Fairfax employee and discovery

will not reveal the existence of unknown parties."  (Defs.' Mot. Dismiss 6 (citing *Breslin v. City

and Cty. of Phila.*, 92 F.R.D. 764, 765 (E.D. Pa. 1981)).

Federal Rule of Civil Procedure 21 provides in pertinent part that "[o]n motion or on its

own, the court may at any time, on just terms, add or drop a party."  Fed.R.Civ.P. 21.  In this

particular case, Plaintiffs have been residents of The Fairfax for decades. Moreover, Walter

Parker has been an employee of The Fairfax since 1988, while Gordon Parker was an employee

from 1988 through 1998.  Plaintiffs filed their original Complaint on June 9, 2016 and amended

same on July 11, 2016.  Under these circumstances, it is inconceivable there exist any additional

defendants that could be unveiled through discovery and would be appropriate to join at this

point in the litigation.[1]  Accordingly, all claims against John Doe defendants #1 through #10

shall be dismissed with prejudice.

---

[1] In fact, Plaintiffs have already demonstrated that they have devoted significant time and energy
in an attempt to identify as many defendants as possible by their inclusion of records from the
Pennsylvania Department of State's website in their Amended Complaint, specifically
identifying the owners of The Fairfax and the officers affiliated with 4247 FX, Inc.  (Am. Compl.
¶¶ 3, 4.)  To the extent they claim Defendants "have gone to lengths" to keep the identities of

**B.      Fair Labor Standards Act Claims Against Individually-Named Defendants**

In addition to naming 4247 FX, Inc. as a Defendant in this action, Plaintiffs have named Joyce Prentis, Gary Kerstein, Marla Klein Kerstein, and Alan Klein as defendants in their individual capacity.  Defendants argue that Plaintiffs have failed to prove these defendants should be held individually liable under the FLSA, and thereby move for dismissal of said claims.  (Defs.' Mot. Dismiss 7, 9.)  For the reasons set forth below, claims against Defendants 4247 FX, Inc., Joyce Prentis, and Alan Klein in their individual capacities shall be dismissed with prejudice and the claims against Gary Kerstein and Marla Klein Kerstein shall be dismissed with leave to amend.

In Count I of Plaintiffs' Amended Complaint, Plaintiffs allege Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (2012), by refusing to pay Plaintiff Walter Parker for overtime worked at The Desk.  (Am. Compl. ¶ 38.)  Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) (citing 29 U.S.C. §203(d) (2012)).  Individual liability may be imposed against a company's owners, officers, or supervisory personnel, provided that the individual "exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest."  *Id.* at 153 (quoting *Haybarger v. Lawrence County Adult Prob. & Parole*, 667 F.3d 408, 417 (3d Cir. 2012)).

---

alleged "outside investors" hidden (Am. Compl. ¶ 60), the remaining allegations in the Amended Complaint clearly demonstrate that any such "investors" could not reasonably be deemed "employers" under the FLSA.  This Court further notes that prior to responding to the instant motion, Plaintiffs filed a Motion for Summary Judgment, in which they sought an immediate judgment (prior to commencement of any discovery) against the named defendants but did not reference any John Does.  (ECF No. 14.)

Plaintiffs provide brief explanations for including the individual defendants in their Amended Complaint. Namely, Plaintiffs allege that 4247 FX is "the sole officer listed for Defendant Fairfax Apartments Associates." (Am. Compl. ¶ 3.) Plaintiffs go on to claim that 4247 FX is "Plaintiff's [sic] employer as defined by the FLSA because it is acting indirectly and/or directly in the interest of Defendant Fairfax Apartments Associates." (Am. Compl. ¶ 34(b).) Plaintiffs claim Ms. Prentis is "listed on the official Secretary of State website as an officer (treasurer) of Defendant 4247 FX, and Walt's employer as defined by the FLSA because she is acting in/directly [sic] in the interest of Defendant Fairfax Apartments Associates." (Am. Compl. ¶ 34(c).) Mr. Kerstein is alleged to be the general manager of The Fairfax and is said to have given "the direct order not to rehire Gordon at The Desk in 2006, resulting in Ms. Parker working until just prior to her death." (Am. Compl. ¶ 34(d).) Mr. Klein is described as "the Klein family patriarch" and the owner of The Fairfax, and is "Plaintiff's employer as defined by the FLSA because he is acting indirectly and/or directly in the interest of Defendant Fairfax Apartments Associates." (Am. Compl. ¶ 34(e).) Finally, Ms. Klein Kerstein, Mr. Klein's wife, is described as having duties "equivalent to that of [Mr. Klein]; combined, they 'run' The Fairfax . . . [and] . . . the occasional contact, including the harassing pounding on Plaintiffs' door and telephone call subsequent to the February 29, 2016 events was directed solely by her." (Am. Compl. ¶ 34(f).)

Plaintiffs do not allege facts sufficient to establish that Defendants 4247 FX, Inc., Joyce Prentis, or Alan H. Klein can be held individually liable under the FLSA. The Amended Complaint merely names these individual defendants, recites the language of the statute, claiming that each individual defendant "is acting indirectly or directly in the interest of Defendant Fairfax Apartments Associates[,]" and makes conclusory statements that are

immaterial to survival of the claims.  Accordingly, all claims of individual liability against these particular defendants shall be dismissed with prejudice.

Moreover, Plaintiffs' Amended Complaint pleads insufficient facts to plausibly show that Defendants Gary Kerstein and Marla Klein Kerstein had supervisory authority over the Plaintiffs *and* were responsible in part or in whole for any FLSA violations.  *See Mackereth v. Kooma, Inc.*, Civ. No. 14-4824, 2015 U.S. Dist. LEXIS 63143, at *20-21 (E.D. Pa. May 14, 2015) (dismissing individual liability claims that were based solely on allegations that defendants were corporate officers and "'exercise[d] sufficient control over the labor policies and practices complained of . . . to be considered employers of Plaintiffs' within the meaning of the FLSA" and concluding that the plaintiff needed "something more than the mere positions of the individual defendants to show that they are Plaintiffs' employers.").  Because Plaintiffs have failed to plead facts that could plausibly demonstrate that either of these Defendants had supervisory authority over Plaintiffs *and* were responsible for violating the FLSA, all claims against them in their individual capacity shall be dismissed with leave to amend. [2]

### C.    Counts I and II Alleging Unpaid Overtime and Unpaid On-Call Time in Violation of the FLSA

Plaintiffs Walter Parker and Gordon Parker allege that Defendants have violated the Fair Labor Standards Act by not compensating Plaintiffs for the overtime and on-call time they had

---

[2]   Plaintiffs' assumption that it was Defendant Gary Kerstein who "gave the direct order not to rehire Gordon at The Desk in 2006" is not only supposition, but is of no consequence.  As this Court discusses in detail hereinbelow, there are no circumstances under which Plaintiff Gordon Parker can sustain a claim under the FLSA.  To the extent Walter Parker is in possession of additional facts to plausibly demonstrate the potential for Mr. Kerstein to ultimately be held liable in his individual capacity, amendment shall be permitted.   Moreover, even construing as true Plaintiffs' allegation that Ms. Kerstein "directed" some unidentified person or people to pound on Plaintiffs' door and telephone them "subsequent to the February 29, 2016 events[,]" Plaintiffs' provide no allegations to potentially demonstrate that this alleged activity had anything to do with their employment.  Again, one last opportunity for amendment shall be provided with regard to this claim.

worked between 2007 and 2016.  (Am. Compl. ¶¶ 36, 46.)  Plaintiffs seek $44,567.50, which they allege is the total amount of unpaid wages owed by Defendants.  (Am. Compl. ¶ 41(a).)

 With regard to Plaintiff Walter Parker's uncompensated overtime claim, this Court does not yet have enough information regarding the rent credit to properly determine whether Defendants have adequately compensated Plaintiff for his scheduled overtime work, therefore Defendants' Motion to Dismiss that claim shall be granted with leave to amend. Plaintiff Walter Parker's claim for unpaid on-call time, and any claim by Gordon Parker shall be dismissed with prejudice, as any amendment would be futile.

### 1.     Plaintiff Walter Parker's Overtime Compensation Claim

 Plaintiff Walter Parker's FLSA claim for overtime compensation raises three questions. First, this Court must determine whether Plaintiff has sufficiently pleaded the existence of unpaid overtime.  Second, this Court must determine whether the reasonable costs of lodging can be counted toward overtime compensation.  Third, this Court must decide whether the $700 rent credit at issue here is "reasonable" under Section 203(m) of the FLSA.  For the reasons set forth below, this Court grants Defendants' Motion to Dismiss Plaintiff Walter Parker's FLSA claim for unpaid overtime, with leave to amend.

### a.     Sufficiency of the Amended Complaint

 At the outset, this Court notes that while Defendants addressed Plaintiff Walter Parker's claims regarding on-call compensation, Defendants did not address his claims for uncompensated overtime.  Nevertheless, the court will determine whether said Plaintiff has pleaded facts sufficient to state a claim for unpaid overtime under the FLSA.  While there is little case law in the Third Circuit to guide this Court's analysis, a district court case out of the Middle

District provides a helpful summary regarding the manner in which the court should evaluate the

sufficiency of unpaid overtime claims at the motion to dismiss stage:

> While highly specific figures need not be pleaded, Plaintiffs must be "able to estimate the time periods in which they worked without proper overtime compensation." *Mell v. GNC Corp.*, No. 10-945, 2010 U.S. Dist. LEXIS 118938, 2010 WL 4668966, at *8 (W.D. Pa. Nov. 9, 2010). Precise records as to days and hours owed are not necessary, but instead "a just and reasonable inference that in their capacity as employees . . . they worked a concrete number of hours for which they were improperly compensated." *Beaulieu v. Vermont*, No. 2:10-cv-00032, 2010 U.S. Dist. LEXIS 101192, 2010 WL 3632460 at *5 (D. Vt. Aug. 5, 2010) (finding individualized determinations as to each Plaintiff based on a weekly estimate sufficient to meet the pleading standards). Of course, "[t]he critical component of a complaint alleging violations of Section 207 is an approximation of the number of unpaid weekly overtime hours worked over the employment period." *Id.* "At a minimum, it must set forth the approximate number of unpaid regular and overtime hours allegedly worked." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, Nos. 10 Civ. 2661(PAC), 10 Civ. 2662(PAC), 10 Civ. 2683(PAC), 10 Civ. 3247(PAC), 2011 U.S. Dist. LEXIS 3585, 2011 WL 321186 at *4 (S.D.N.Y. Jan. 28, 2011).

*Attanasio v. Cmty. Health Sys.*, Civ. No. 11-CV-582, 2011 U.S. Dist. LEXIS 121764, at

*20–21 (M.D. Pa. Oct. 20, 2011).

Under this standard, Plaintiff Walter Parker has pleaded sufficient facts to state a

claim for relief under the FLSA. Plaintiffs' Amended Complaint alleges that Walter

Parker has worked overtime without compensation from 2007 through 2016. (Am.

Compl. ¶ 25.) Plaintiff Walter Parker also provides specific figures for the number of

scheduled hours he worked per week from August 23, 2015, through February 28, 2016.

(Am. Compl. ¶ 26.) Plaintiff has not yet provided evidence to support these assertions,

but specific evidence is not required at this stage in the litigation. Plaintiff need only

provide an estimate of overtime worked. Based on Plaintiffs' Amended Complaint, it is

plausible that Plaintiff Walter Parker has worked overtime between 2007 and 2016

without sufficient compensation.

### b.    Rent Credit as Compensation

Next, based on the facts as alleged in the Amended Complaint, it is likely The Fairfax

may properly include a rent credit towards any compensation owed to Plaintiffs.  The FLSA

provides that the reasonable costs of lodging may be included in determining paid wages:

> "Wage" paid to any employee includes the reasonable cost, as determined
> by the Administrator [Secretary], to the employer of furnishing such
> employee with board, lodging, or other facilities, if such board, lodging, or
> other facilities are customarily furnished by such employer to his
> employees: *Provided*, That the cost of board, lodging, or other facilities
> shall not be included as part of the wage paid to any employee to the
> extent it is excluded therefrom under the terms of a bona fide collective-
> bargaining agreement applicable to the particular employee: *Provided
> further*, that the Secretary is authorized to determine the fair value of such
> board, lodging, or other facilities for defined classes of employees and in
> defined areas, based on average cost to the employer or to groups of
> employers similarly situated, or average value to groups of employees, or
> other appropriate measures of fair value.  Such evaluations, where
> applicable and pertinent, shall be used in lieu of actual measure of cost in
> determining the wage paid to any employee.

29 USCS § 203(m).

If the lodging provided is primarily for the benefit of the employer, not the employee,

then it cannot be included in the wages of an employee.  29 CFR § 531.32.  Accordingly, "when

the employer pays for 'board, lodging, or other facilities,' it may add the costs of those facilities

to the cash wage for purposes of complying with the FLSA minimum, [unless they are provided]

primarily for the benefit or convenience of the employer.'"  *Rivera v. Brickman Group, Ltd.*, Civ.

No. 05-1518, 2008 U.S. Dist. LEXIS 1167, at *25–26 (E.D. Pa. Jan. 7, 2008).

Construing Plaintiffs' Amended Complaint liberally as this Court must do, the rent credit

was not provided primarily for the benefit of Defendants.  Plaintiffs were not required to live in

The Fairfax as a condition of Plaintiff Walter Parker's employment.  In fact, Plaintiffs acknowledged that they "could easily have lived elsewhere" and had even considered purchasing a house or condominium in 2015, while Plaintiff Walter Parker was still a full-time employee. (Am. Compl. ¶¶ 50, 76(b).)

Plaintiffs make a number of conclusory allegations, claiming that Plaintiff Walter Parker was "chained" to The Desk and on-call "24/7/365," but at no point do they allege any facts from which to infer that The Fairfax required Plaintiffs to live on site for the convenience or benefit of Defendants.  (Am. Compl. ¶¶ 21, 22.)  Because Plaintiffs have not established that the rent credit was provided primarily for the benefit of The Fairfax, this Court finds that the rent credit may be counted toward overtime compensation.

### c.        Value of the Rent Credit

This Court now turns to the question of the rent credit's value.  This determination turns on Section 203(m)'s use of the term "reasonable cost."    The Department of Labor defines reasonable cost as "not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees."  29 CFR § 531.3(a).  "Reasonable cost does not include a profit to the employer or to any affiliated person."  29 CFR § 531.3(b).

According to the Department of Labor, there are three methods to determine reasonable cost:

> (1) An employer may calculate the "reasonable cost" of facilities in accordance with the requirements set forth in § 531.3; (2) an employer may request that a determination of "reasonable cost" be made, including a determination having particular application; and (3) an employer may request that a determination of "fair value" of the furnished facilities be made to be used in lieu of the actual measure of the cost of the furnished facilities in assessing the "wages" paid to an employee.

29 CFR § 531.33.

11

Therefore, although an employer has the option of requesting a determination from the Administrator, it is not required to do so in order to claim the credit.  This Court has no indication that The Fairfax has requested a reasonable cost determination from the Administrator.  If The Fairfax was to determine the "reasonable cost" in accordance with § 531.3, it would have to determine "the cost of operation and maintenance including adequate depreciation plus a reasonable allowance (not more than 5 ½ percent) for interest on the depreciated amount of capital invested by the employer[.]"  29 CFR § 531.3(c).  There is also no indication in the pleadings that The Fairfax has made this calculation.

At this point, this Court does not have sufficient evidence to determine whether the $700 rent credit is the "reasonable cost" of lodging as defined by Section 203(m) of the FLSA.  The $700 credit might be the difference between the fair market value of Plaintiffs' apartment and what they pay in monthly rent, but the apartment's fair market value is not relevant to the calculation of reasonable cost.  Reasonable cost only includes the actual cost to the employer; it does not include profit.  For this reason, this Court is unable to conclusively determine the amount of the rent credit that can be properly counted as compensation for any overtime Plaintiff may have worked.  Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for unpaid overtime shall be granted with leave for Plaintiffs to amend.

## 2.    Plaintiff Walter Parker's Unpaid On-Call Time Claim

On-call time can be compensable under the FLSA, but the Supreme Court has not established a "bright line rule" to determine whether hours spent on call qualify for compensation.  *Ingram v. Cty. of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998) (citing *Skidmore v. Swift*, 323 U.S. 134 (1944)).  The Department of Labor has issued regulations regarding on-call time, and the Third Circuit has held that those regulations are "entitled to substantial deference."

*Ingram*, 144 F.3d at 268 (citing *Elizabeth Blackwell Health Center for Women v. Knoll*, 61 F.3d 170, 182 (3d Cir. 1995); 29 CFR § 553.221).

The Third Circuit, in interpreting the Department of Labor regulations, has established four factors to help courts determine whether on-call time is compensable under the FLSA:

> First, whether the employee may carry a beeper or leave home; second, the frequency of calls and the nature of the employer's demands; third, the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and fourth, whether the employee actually engaged in personal activities during on-call time. If these factors reveal onerous on-call policies and significant interference with the employee's personal life, Courts have held that on-call time is compensable.

*Ingram*, 144 F.3d at 268; *see also Genarie v. PRD Mgmt.*, Civ. No. 04-2082, 2006 U.S. Dist. LEXIS 9705, at *48 (D.N.J. Feb. 17, 2006) (finding on-call time was not compensable and granting summary judgment where plaintiffs conceded that they were "free to engage in personal pursuits while on call." ).

Plaintiff Walter Parker has not alleged facts sufficient to state a claim for relief for uncompensated on-call time under the FLSA. Plaintiffs' Amended Complaint includes conclusory allegations, claiming Plaintiff was "'on call' literally '24/7/365.'" (Am. Compl. ¶ 21.) Plaintiff also claims that he was "on a 'short leash,' perpetually 'chained' to the Desk." (Am. Compl. ¶ 22.) In the same paragraph, however, Plaintiff concedes that he was "free to conduct some personal business during his on-call time." (Am. Compl. ¶ 22.) Said Plaintiff also claims that he has been unable to use any of his personal days and that he has adjusted his sleep schedule in case he is called in for an unscheduled double shift. (Am. Compl. ¶ 23.) He includes no information in his Amended Complaint regarding the frequency with which he received calls from his employer, how often he had to cover another employee's shift, the flexibility with

which he was permitted to switch on-call shifts with other employees, or whether he was forced

to carry a beeper or similar device.

Casting aside conclusory allegations regarding being "chained" to the Desk, Plaintiff

Walter Parker has merely stated that he was frequently on call in case of an emergency or in case

another employee did not show up for their shift, while also conceding that he was able to

conduct personal business during times when he believed he was on call.  Assessing Plaintiff

Walter Parker's claim for on-call under the FLSA in conjunction with the Department of Labor's

regulations and the Third Circuit's interpretation of those regulations, said Plaintiff cannot

plausibly sustain his claim and amendment would be futile.  Accordingly, said claim is dismissed

with prejudice.

### 3.        Plaintiff Gordon Parker's Employment Status

The threshold inquiry in an FLSA case "is whether the plaintiff has alleged an actionable

employer-employee relationship."  *Thompson*, 748 F.3d at 148.  This relationship, in the context

of an FLSA claim, is expansive.  The Third Circuit has instructed:

> When determining whether someone is an employee under the FLSA,
> "economic reality rather than technical concepts is to be the test of
> employment."  Under this theory, the FLSA defines employer
> "expansively," and with "striking breadth."  The Supreme Court has even
> gone so far as to acknowledge that the FLSA's definition of an employer
> is "the broadest definition that has ever been included in any one act."

*In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467–68 (3d Cir.

2012) (citations omitted).

Even under this expansive definition, Plaintiff Gordon Parker was not an employee of

The Fairfax between 2007 and 2016.  By his own admission, Mr. Parker resigned from his

position at The Fairfax in October of 1998.  (Am. Compl. ¶ 17.)  While Plaintiff Gordon Parker

alleges that he at times worked in Plaintiff Walter Parker's stead, the Amended Complaint is

devoid of any specific instances when Plaintiff Gordon Parker functioned as an employee of The Fairfax after his resignation.  (Am. Compl. ¶ 20.)  Plaintiffs specifically allege that Plaintiff Walter Parker is due unpaid overtime wages which accrued from when he was on call, but Plaintiffs allege no specific unpaid wages for Gordon Parker.  (Am. Compl. ¶¶ 25, 26.)

These facts, when viewed in the light most favorable to the Plaintiffs, fail to establish that Plaintiff Gordon Parker was an employee of The Fairfax at any time between 2007 and 2016.  As such, Count II—as far as it is a claim brought by Plaintiff Gordon Parker against Defendant The Fairfax—shall be dismissed with prejudice.

### D.   Count III: Retaliation Under the FLSA

Plaintiffs claim Defendants have retaliated against them for filing an FLSA claim in violation of 29 U.S.C. §§ 218(a)(2) and 218(c)(a)(1-5).[3]  Specifically, Plaintiffs allege that after they raised their wage concerns, Walter Parker was "constructively terminated" when The Fairfax refused to allow him to return to his position at The Desk after he had left due to a "self-reported disability."  (Am. Compl. ¶ 58(a).)  Plaintiffs further claim that after they raised their wage concerns, Walter Parker's position "was either abolished, or given to someone else, with the rent on Plaintiffs' apartment raised to $1,000.00 effective September 1, 2016."  (Am. Compl. ¶ 58(b).)

It is well settled that:

> Claims for retaliation under the FLSA are analyzed under the three-part burden-shifting framework prescribed by *McDonnell Douglas*. *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002).
>
> Under that framework, to make out a claim for retaliation a plaintiff must show that (1) [s/he] engaged in protected activity, (2) [s/he] experienced an adverse

---

[3] Plaintiffs reference 29 U.S.C. § 218(a)(2) in their Amended Complaint.  Because § 218(a)(2) does not exist, this Court shall assume Plaintiffs intended to invoke 29 U.S.C. § 215(a) and 29 U.S.C. § 218c(a)(1)-(5).

employment action after or contemporaneous to the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). If the plaintiff succeeds in making a prima facie case, the burden is returned to the defendant to establish a legitimate, nonretaliatory reason for the adverse employment action. *Woodson*, 109 F.3d at 920 n.2. If the defendant meets the burden of producing evidence of a nonretaliatory reason for the action, then the ultimate burden of persuasion returns to the plaintiff who must prove that the alleged reason proffered by the defendant were pretextual. *Marra*, 497 F.3d at 300 (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

*Chickilly v. Panther Valley Sch. Dist.*, Civ. No. 14-2173, 2016 U.S. Dist. LEXIS 129840, at *22-23 (M.D. Pa. Sept. 21, 2016). This Court recognizes that "while [Plaintiffs are] not required to prove a prima facie case at the motion to dismiss stage, [they are] required to meet the heightened pleading requirements of *Twombly* and 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Morton v. Arnold*, 618 F. App'x 136, 141 (3d Cir. 2015) (internal citations omitted).

Plaintiff Gordon Parker's retaliation claim necessarily fails because he has not been an employee of The Fairfax since 1998. The absence of an employer-employee relationship makes retaliation under the FLSA a legal impossibility.

With regard to Walter Parker, he alleges he "was forced to take indefinite leave from The Desk for an unrelated reason" on February 29, 2016. (Am. Compl. ¶ 57.) Walter Parker claimed a self-reported disability and had filed a request under the Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.* ("ADA"), which he eventually withdrew. (Am. Compl. ¶ 58(a).)[4] At this point, Defendants had not yet been put on notice of any sort of wage complaint.[5]

---

[4]  Defendants note that although they were not legally required to do so, they provided Defendant Walter Parker with five (5) weeks of unpaid leave when he initially claimed a medical disability, and agreed to hold his job open until June 1, 2016. (Defs.' Mot. Dismiss 3-4.)
[5]  Plaintiffs allege "[s]ince March 1, 2016, when Defendants were put on notice of the unpaid-wage allegations, they have retaliated against the Plaintiffs in numerous ways . . . " (Am.

In response to Defendants' Motion to Dismiss, Plaintiffs have included the text of the letter Plaintiff Walter Parker sent to Defendants on March 18, 2016, in which Walter Parker voluntarily resigns from his position at The Desk and confirms he took a leave of absence on February 29, 2016. (Pls.' Opp'n Mot. Dismiss 4.)[6]  Specifically, Walter Parker wrote that the "work-related progression of my ADHD/Asperger's condition necessities that I undergo a rather extensive medical evaluation process related to my employment and general employability, as it relates to the desk job." (Pls.' Opp'n Mot. Dismiss 4.)  Walter Parker additionally wrote that he was "only capable of working in a highly-structured environment" where he would "not deal with the public." (Pls.' Opp'n Mot. Dismiss 4.)

After receiving this letter, Defendants requested that Plaintiff submit a medical evaluation confirming he was "capable of performing the essential functions of this job[,]" which necessarily included working with the public. (Defs.' Mot. Dismiss 4.)  Defendants maintain that Walter Parker submitted a medical evaluation which improperly named him as "Mr. Walter" and included no discussion of Mr. Parker's abilities to perform the essential functions of his job.

---

Compl. ¶ 58.)  Plaintiffs do not provide any indication as to the nature of the "notice" to which they refer.  However, for the reasons set forth herein, this omission is of no consequence.

[6] In deciding a motion to dismiss, courts may consider the allegations contained in the complaint, attached exhibits, and matters of public record. P*ension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider indisputably authentic documents submitted to the court without converting the motion to dismiss into a motion for summary judgment.  *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  Although a copy of Plaintiff Walter Parker's notice of self-reported disability is not attached to the Amended Complaint, both parties reference the notice and Plaintiffs provide an excerpt from same in their Opposition to Defendants' Motion.  In this case, neither party disputes the authenticity of the letter Plaintiff Walter Parker submitted to Defendants regarding his subsequently withdrawn ADA request (Pls.' Opp'n Defs.' Mot. Dismiss 4).

(Defs.' Mot. Dismiss 4.)  Therefore, Defendants requested a more detailed medical evaluation but received no response from Walter Parker.  (Defs.' Mot. Dismiss 4.)[7]

Construing the facts set forth in Plaintiffs' Amended Complaint as true, Plaintiffs are unable to meet the minimal pleadings standards for sustaining a retaliation claim under the FLSA.  As a preliminary matter, Plaintiffs' pleadings are devoid of facts from which one could plausibly infer that Walter Parker was engaged in any protected activity.  Moreover, Walter Parker was not discharged from his position; he himself raised the issue of his suitability, failed to provide the necessary medical clearances afterwards, and then—of his own volition—decided not to return to the job.  The pleadings further demonstrate that Walter Parker was given ample opportunity to obtain the necessary medical clearances to perform the essential functions of his job and failed to do so.

Because Plaintiffs have failed to plead a plausible claim of retaliation under the FLSA, Defendants' Motion to Dismiss same shall be granted and said claim shall be dismissed with prejudice.[8]

---

[7]  Defendants further note that Walter Parker never returned to work but instead, filed the instant lawsuit.  Once Defendants realized Walter Parker was not returning to work, they notified Plaintiffs in March, April and June that effective September 1, 2016, the rent credit would end. However, Defendants offered Plaintiffs a continued rental rate that was lower than that offered to the public for a similar apartment unit.  (Defs.' Mot. Dismiss 5.)

[8]  In further support of dismissal, Defendants argue that Plaintiffs' FLSA retaliation claim is precluded for failure to exhaust administrative remedies pursuant to 29 U.S.C. §218c(b)(1) and 15 U.S.C. § 2087(b).  (Defs.' Mot. Dismiss 12.)  However, neither of these statutory provisions requires an employee to file a complaint of discrimination with the Secretary of Labor prior to commencing suit in federal court.  Instead, both statutory provisions provide that an employee "may" do so.  In response to the instant Motion, Plaintiffs have attached a letter from the U.S. Department of Labor dated April 18, 2016, in which the Department references the fact that Plaintiff Walter Parker "recently" contacted them regarding "a complaint that the above-named employer failed to pay proper over time under the Fair Labor Standards Act (FLSA)."  (Pls.' Opp'n Mot. Dismiss, Ex. A.)  Although the letter did not reference any retaliation complaint by Plaintiff Walter Parker, it informed him of the Department's decision to decline to investigate his wage claim and notified him of his right to bring a private legal action. Because Plaintiffs were

### E.  Count IX: Fair Housing Act

Plaintiffs next allege that all Defendants are in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*. ("FHA").  Specifically, Plaintiffs allege that their "status as disabled individuals" is directly responsible for their treatment by Defendants, which includes being treated as "serfs," the "human-trafficking" of Plaintiff Gordon Parker, the inability to select an apartment, and "encouraging internet harassment and threats against Plaintiff Gordon Roy Parker, in collusion with UPenn."  (Am. Compl. ¶ 89.)

The Fair Housing Act makes it unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter[.]"  42 U.S.C. § 3604(f)(1).  The FHA provides that "'handicap' means, with respect to a person, a physical or mental impairment which substantially limits one or more of such person's major life activities, a record of having such an impairment, or being regarded as having such an impairment."  42 U.S.C. § 3602(h).

Plaintiffs' Amended Complaint is devoid of any allegations that either of them has a specific handicap as defined by the FHA.  Plaintiffs state that Gordon Parker "assumed the caregiver role" for Plaintiff Walter Parker after the death of their mother.  (Am. Compl. ¶ 19.) They further allege they are "mutual caregivers and mutually disabled."  (Am. Compl. ¶ 23(c).) However, absent any allegations of a specific condition that would constitute a "handicap" as defined by the FHA, their claim fails.

Additionally, the Amended Complaint is similarly devoid of any facts to indicate potential discrimination based on a handicap as defined by the FHA.  Plaintiffs allege that they were forced to move to their current apartment in February of 2008, and were not permitted to

---

not required to exhaust their administrative remedies with regard to their retaliation claim, Defendants' argument on this point is without merit.

change apartments "as a regular tenant paying full rent would." (Am. Compl. ¶ 49.) Aside from this allegation being contradictory to others contained within the Amended Complaint, at no point do Plaintiffs claim that this alleged treatment by Defendants was attributable to any purported "handicap" they might have.

Because Plaintiffs have failed to allege a specific handicap and discrimination on the basis of that handicap, the Fair Housing Act claim as contained in Count IX of Plaintiffs' Amended Complaint shall be dismissed. Inasmuch as it appears any further attempt to amend this claim would be futile, said dismissal is with prejudice.

### F.      State Law Claims

Plaintiffs allege Defendants have violated Pennsylvania's Wage Payment Collection Law (WPCL), and also raise common law claims for breach of contract, fraudulent or negligent misrepresentation, unjust enrichment, and conversion. (Am. Compl. ¶¶ 63,74, 76, 86, 87.) For the reasons set forth below, each of Plaintiffs' state law claims shall be dismissed.

### 1.      Common Law Claims

Plaintiffs' common law claims are duplicative of their FLSA claims and must be dismissed. In particular, when state law claims are based on the same set of facts and circumstances as a plaintiff's FLSA claim, the FLSA preempts said state law claims. *See Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 941 (3d Cir. Pa. 2003) (affirming dismissal of common law claim stemming "from the same set of facts as the claim under the FLSA" because FLSA provided a remedy).

Each of Plaintiffs' common law claims is based on the same set of facts as Plaintiffs' federal law claims. Plaintiffs premise their breach of contract claim on the amount of the rent credit and its application to their overtime and on-call wages due, as well as the rental suitability

of their unit in the Fairfax.  (Am. Compl. ¶¶ 67, 70, 71.)  Plaintiffs' negligent or fraudulent misrepresentation claims are also based on the rent credit and the rental suitability of their unit.  (Am. Compl. ¶ 76.)  Plaintiffs' unjust enrichment and conversion claims are also both focused on the rent credit.  (Am. Compl. ¶ 80.)  Each of these common law claims are focused squarely on the monthly rent credit, which is at the heart of Plaintiffs' FLSA claims.  As such, said claims are preempted by the FLSA and shall be dismissed.[9]

### 2.      WPCL Claim

Plaintiffs' only remaining state law claim, which is premised on the WPCL, must also be dismissed.  The Third Circuit has noted that the WPCL "does not create a right to compensation . . . rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages.  The contract between the parties governs in determining whether specific wages are earned."  *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996) (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990)).

Nowhere in Plaintiffs' Amended Complaint do they allege the existence of an employment contract between themselves at the Fairfax.  Instead, Plaintiffs merely allege that Walter Parker replaced his mother as desk manager after her death on July 26, 2007.  (Am. Compl. ¶ 19.)  Other than this, Plaintiffs do not comment on whether an employment contract, either written or oral, exists.  Without this allegation, Plaintiffs cannot establish the necessary breach of contractual obligation that could plausibly sustain a claim for relief under the WPCL.  Accordingly, said claims shall be dismissed with leave to amend.

---

[9]  Said dismissal shall be without prejudice to re-raise same in state court, in the event Plaintiffs are unable to sustain their pleading burden on their FLSA claims.

### G.    Futility of Amendment

In their Opposition to Defendants' Motion, Plaintiffs write "[a]ny defects in pleading can be remedied with leave to amend." (Pls.' Mem. Opp'n Mot. Dismiss 1.) A district court is justified in denying leave to amend based on "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Futility, in this context, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

In this case, Plaintiffs have already been given an opportunity to amend their Complaint and they did so on July 11, 2016 by filing an extensive, 31-page Amended Complaint that chronicles—in particular detail—the circumstances surrounding their decades' long relationship with Defendants. Recognizing that "[i]f a complaint is subject to dismissal, 'a district court must permit a curative amendment unless such an amendment would be inequitable or futile[,]'" *McCann v. Borough of Magnolia*, 581 F. App'x 125, 126 (3d Cir. 2014) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). *See also Utah v. Strayer Univ.*, 667 F. App'x 370, 372 (3d Cir. 2016) ("[I]n light of the nature of the allegations set forth in [Plaintiff's] amended complaint, which at times border on the frivolous, we conclude that the District Court did not abuse its discretion in determining that allowing him leave to amend his complaint would have been futile.") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). Taking this standard into consideration, this Court declines to grant Plaintiffs leave to amend their claims against the John Doe defendants, 4247 FX, Inc., Joyce Prentis, and Alan H. Klein.

This Court also declines to grant Plaintiffs leave to amend their FLSA uncompensated on-call claims, as well as their state common law claims

Having pointed out the deficiencies in Plaintiffs' remaining claims, this Court shall grant Plaintiffs leave to amend same because there is a possibility that "a properly amended complaint would state a claim upon which" Plaintiffs could obtain relief.  *Grayson*, 293 F.3d at 109. Accordingly, Plaintiffs may amend their complaint insofar as they are able to provide this Court with additional details regarding their individual FLSA liability claims against Defendants Gary Kerstein and Marla Klein Kerstein, Walter Parker's overtime claim under the FLSA, and Plaintiffs' WPCL claim, to the extent they might be able to provide more information regarding the contractual obligation they believe Defendants have violated.

**V.      Conclusion**

For the reasons set forth hereinabove, Defendants' Motion to Dismiss shall be granted and Plaintiff's claims against all John Doe defendants, as well as all claims against 4247 FX, Inc., Joyce Prentis, and Alan H. Klein in their individual capacities, and Counts II, III and IX are dismissed with prejudice.

Defendants' Motion to Dismiss shall be granted with leave for Plaintiffs to amend as to Counts I and IV, as well as to Plaintiffs' FLSA individual liability claims against Defendants Gary Kerstein and Marla Klein Kerstein.  Counts V, VI, VII, and VIII shall also be dismissed, in accordance with Footnote 9 herein.

An appropriate Order follows.

BY THE COURT:


/s/  C. Darnell Jones, II   J.
